Case number 13-6514, N.W., a minor child, by and through his next friend and parents, J.W. and J.W. et al, versus the Boone County Board of Education et al. Arguments not to exceed 15 minutes per side. Ms. Stewart, for the appellants, you may proceed. Good morning. May it please the Court, Counsel, my name is Mary Ann Stewart. I represent the appellants, the Boone County Board of Education, in this matter. I have asked to reserve three minutes as rebuttal. Fine. In this case, the appellants, the Boone County Board of Education, seeks review of the United States District Court's decision ordering the public school district to reimburse the appellees' private school tuition. Purportedly, under IDEA's provisions for stay put. This occurred after there had been administrative and judicial findings that the parents had unilaterally placed their son, N.W., in the private school setting, and that the Boone County School District had, consistent with IDEA's mandates, offered a free and appropriate public education, or FAPE, which that offer was rejected by the parents. We are asking that you reverse the District Court's erroneous application of stay put, and reinstate the ECAB's well-reasoned and legally supported decision in this case. The issues that are presented in this appeal are fairly narrow. The issues are whether the District Court committed reversible error by failing to give any effect whatsoever to the IDEA provisions pertaining to unilateral placements. In particular, to Section 1412, Subsection A, Subsection 10c, which bars parents from reimbursement for private school tuition when they unilaterally place a child in the private school, and then fail to show that the public school denied them FAPE. The second issue is even whether stay put was even properly applied in this instance. Given the fact that, as a matter of law, the private school setting in this case, ABS, was never N.W.'s stay put placement. What is your contention would be the stay put placement? In this case, our contention is that the stay put placement would have been the private school that he was placed in when he was in preschool, which was St. Rita's School for the Deaf. By way of background, when N.W. was three years old, his parents came to the public school district. He was diagnosed with apraxia and autism. Apraxia is a speech-language deficit. The ARC, they went through the ARC process, and IEP was developed and implemented in which N.W. was placed through the ARC at St. Rita's School for the Deaf to provide him with specialized education, not for the autism so much as for the apraxia, to teach him how to speak, how to communicate. And he was enrolled at St. Rita's School for the Deaf until summer of 2010, at which point his parents made the unilateral decision to remove him from St. Rita's. They enrolled him at ABS without coming back to the Boone County School District. They did not provide notice to the school district of this change of placement. They simply enrolled him at ABS. ABS is a different private school, offers different services than St. Rita's, and is completely unrelated to St. Rita's. It's also in a different location. But ABS provides specialized instruction for children with autism using ABA methodologies. The Boone County School District in 2010 utilized the same ABA methodologies, had the same quality teachers in some cases, as the ECAB pointed out, had better quality teachers because the school district could offer, just as ABS did, individualized classrooms, small ratios, small teacher-to-student ratios. Did St. Rita's offer those ABA methodologies? They did not. St. Rita's is a school for the deaf. But what St. Rita's offered was education for children with apraxia. Children with apraxia have difficulty communicating, as you and I do. They have difficulty forming words. And so St. Rita's had a unique program. And back then, apraxia was a diagnosis that was fairly novel. What's confusing me a little bit is that you were saying that St. Rita's is the stay-put placement, but then when you were comparing the school that the child's parents sent him to, ABS, you're comparing it to the Boone County Public Schools? That's correct. Not St. Rita's? Not St. Rita's, because at that point, once the parents changed placement, the Boone County and the school district became aware that they changed placement. The school district then convened an ARC to address the change in placement and to address is this the appropriate placement for NW at this time, or can we provide him with free and appropriate public education. If the parent's concern here is for the autism and not the apraxia at this point, can the public school district provide the services that they are seeking from the private schools? So was an IEP undertaken at that point in time in 2010? Correct. On October 21st, the district and the parents met in the ARC to develop the IEP. However, no consensus was reached as to NW's placement at the ARC. In fact, the conference summary notes reflect there was no consensus. The school district maintained that it could educate NW in the public school setting. The parents insisted they did not want to move him from ABS because they had just enrolled him there and did not want to go through the disruption that they thought he would go through in moving to a different school. So there was no consensus reached as to placement, and therefore the parties went to mediation, which is a mechanism under IDEA when the parties cannot reach consensus through the ARC process. They went to mediation on November 15th, 2010. They still did not reach consensus or agreement as to NW's placement. The school district was still insistent that it could provide free and appropriate public education for him in the public school setting. The parents, however, did not want to move him from ABS. The mediated agreement that the parties reached, the school district agreed to pay for one year's limited tuition, pay for one year tuition at ABS. But the mediated agreement specifically stated that the district was not making any admission as to placement. The agreement contemplated that at the end of the school year, the parents would transition NW back to the public school district. So that was the end of the school year, 10 to 11? That's correct. And does the record show whether the child then moved into the public school? The record shows that the child did not move into the public schools because the parents didn't enroll him in the public schools. What the record shows is that beginning in the spring of 2011, the school district convened several ARCs to formulate the transition plan with the parents to transition him, specifically to transition him to the Boone County School District. However, on August 25th, the parents walked out of that ARC and said, no, we're not going to do this. You're not ready for us. And that became the issue at the due process. That was one of the issues at the due process proceeding, where the hearing officer in every judicial and administrative fact finder in this case has found that the district did, in fact, offer FAPE, did, in fact, offer an appropriate education, and that the parents had unreasonably rejected that. So earlier in your discussion, you mentioned 1412A10C. Correct. On the state put, what is your contention? Our contention on the state put is that the district court simply misapplied it. Here's what the district court did. The district court said, well, state put applies because ipso facto, that he was at ABS at the time that the due process proceedings were initiated. Therefore, because he was physically there, that's his state put placement. And yet, that's not with the IDA. That's not the law under IDA. It's not under the law under the subsequent decisions. Instead, we have cited the court to this VIDE case out of the Second Circuit, the KD case out of the Ninth Circuit, the Sixth Circuit's own case in Tucker v. Callaway. All of those cases established that it is not where the child was physically at the time, but rather, first of all, where did the ARC place him? And in this case, the ARC never, ever, the IEPs never placed him at ABS. And second, did the school district agree to it? Now, the appellees have argued, well, the school district agreed to it through the mediation. In November of 2010, going through the mediation and agreeing to that limited one-year tuition payment. Again, Zvidee, KD, Tucker all established, well, Zvidee and KD, I should say, established that a school district merely agreeing to pay for tuition for a limited period of time does not establish placement. In fact, those are two separate decisions. Where do we go? Those are two cases from outside the circuit, right? That's correct. So is there a provision, either in the statute or the regulations, that indicates that payment for one year is not enough to establish placement? Yes. I would direct your attention to the provisions under A10C. 1412 again? Yes, 1412. That reimbursement for private school placement under subsection 2, if the parents of a child with a disability enroll the child in a private elementary school or secondary school without the consent or referral of the public agency or a court orders officer may require the agency to reimburse the parents for costs of the enrollment only if the court or the hearing officer finds the agency had not made a free and appropriate education available to the child in a timely manner. And in this case, all of the administrative findings, the findings of the hearing officer, the findings of the ECAB, and even Judge Bertelsman's findings all established, and those have not been appealed, by the way, by the appellees, that the free and appropriate education was made by, that offer was made by the school district at the very outset. And I would also direct the court's attention to the Tucker case. For the Tucker case in the Sixth Circuit, the Tucker outright rejected the application of stay put in the manner which the district court did in this case. In that case, the Tucker court stated, the court sees no need to address at any length the Tucker's argument that stay put apply in this case. They unilaterally placed her son in LCDC for the 1993-94 school year. They cannot properly expect that the IDAA would require a local school district to bear the cost of such unilateral placement during the pendency of administrative and judicial proceedings. In that case, the Sixth Circuit denied the reimbursement, even during the pendency of administrative and judicial proceedings. The court further— The red light is on, so if you want to bring this to a conclusion— I would just bring it to a conclusion. The Sixth Circuit further pointed out that if that were the case, any parent could take his or her chances on an initial unilateral placement, banking on the likelihood that this would be protracted litigation, and thereby artificially force the school district to pay, at least for the later years, when they had offered free and appropriate education. Thank you. May it please the court. My name is Karen Ginn. I represent the appellee, the minor child, N.W., who brings this case through his parents and next friends, J.W. and J.W. The unilateral placement— Could you speak up a little, Ms. Ginn? I certainly will. Thank you. It's our contention that none of the 1412A10C cases are relevant, the unilateral placement statute, because no unilateral placement occurred during the pendency of this case. The case was brought, and there was a hearing—I'm sorry, a finding with the hearing officer and a finding in the district court, it's correct, in June of 2010. So you're saying that somebody could make a unilateral placement on Monday, then file suit on Tuesday, and rely upon the stay-put provision because it was done before the suit was filed? In this case, it—obviously, that's an exaggeration, but in this case, it was a finding from June of 2010, and then the mediated agreement had been fulfilled. The contract was completed on May 2011, and the school district continued to meet with the family in preparation for the child to return to Boone County Schools for meetings during the summer. And all the while, although appellants contend that ABS was never written as his placement, the IEP that was being proposed in the Admissions and Release Committee stated again and again as late as July 20th of 2011 and August 25th of 2011 that the child would attend ABS school with the district continuing to pay for it because they were paying for it. They had acquiesced at that point, even though their obligation under the mediation had ended in May of 2011. The plan written in the IEP at that point was the child would never even attend the school in Boone County, which is called the New Haven Elementary School, until late September, at which time he would begin a transition of half days and then continue on until he was prepared and ready and that the program was suitable for him. You said that—I'm sorry. No, go ahead. That that was a proposed IEP. Was that not an ever-completed IEP or a signed IEP? That's correct. It is not an IEP that was ever implemented, and which is accurately noted by the district court in the Thomas case from this circuit where an unimplemented IEP can never be the placement, which is— My question to you was you seemed to say—you started out by saying the cases that the district is relying upon are inapplicable because the change in placement didn't occur during the case. So I asked you, you can unilaterally put your child someplace on Monday, then you can file suit on Tuesday—this is obviously hypothetical— and then the state put—then these cases are inapplicable. That's your argument, right? It is. So your long, long answer seemed to be focusing in on the fact that there was a settled procedure for one year, and you used the words in your answer, the district thereby acquiesced in the child staying at that school. Where do I find that acquiescence given that the language of the mediated settlement seems to say exactly the opposite of that? Well, one place that it would be found is in I think what was Respondents Exhibit 9 in the record, which was the IEP that was being developed at that point. But if the IEP is never completed, how can that be then deemed to be acquiescence? If you're saying they're bound by the proposed IEP, then why aren't the parents bound by the proposed IEP, which envisioned transitioning into the public school? The distinction in that is that it wasn't necessarily the IEP, but the fact that the school district continued to pay, continued to allude to the fact and represent to the parents that they would continue to pay all the while they were transitioning the child back to Boone County Schools. The important part of the mediated agreement was— So maybe the school district would honor that had the parents not simply withdrawn from the procedure and walked out. What you're saying could have, should have, would have happened is not what happened here. Well, what happened was that in June of 2010, there was a unilateral placement. A year later, the mediated agreement, which the parents in the school district added their own terms that they both agreed would be complete, and it was completed in May of 2011. As the parents attempted to continue to work with the school district in anticipation of the child returning, which they intended to do, absolutely, despite appellant's contention, is that they worked through the summer and still, despite the fact that they were starting so late in preparing the IEP, that's the real reason that transition was still, where they were still working on the IEP. The school district says that it was late because they scheduled four different meetings, none of which your clients attended. Is that factually true? There were attempts to contact them to schedule a meeting, but the very first attempt was after the deadline, the drop-dead deadline that was listed in the mediated agreement, a term that the parents asked to be included in the mediation agreement, which the school district ignored. They didn't even make attempt to contact the parents to schedule until after the date. Did the parents attempt to contact the school district and say, hey, look, we've got this drop-dead date, we haven't heard from you, let's get going? Well, honestly, that wasn't the parents' term to abide. It was the school district's. My question is, did they contact the school district, whether it was their responsibility or not? To my knowledge, they did not until the school district contacted them, and then they began to. So is it the settlement that you're relying upon, which seems to refute what you say, or is it the fact that the school district started the IEP process late that somehow distinguishes this case from others? It is definitely not the mediated agreement we're relying on for stay-put because case law is clear that the mediated agreement doesn't create stay-put. However, the mediated agreement was over. We were past that. The clients and the family were meeting with the school district. So then what are you relying upon if you're not relying upon the mediated settlement? Because you told me earlier that the school district had acquiesced in that, so that means to me you're relying upon it. So now if you're not relying upon it, what are you relying upon? We're relying on their acquiescence during the summer of 2011, which is after the terms of the mediated agreement. But school districts have no ability to force a parent to put a kid in any particular school, public or private. You have a legal obligation, as I understand it, to make sure your child is being educated, but you can pick where that is as long as it's a licensed place. This argument is about fighting about money, not whether the child is being educated or not. So what did the school district do that constituted acquiescing in something that they were powerless to change anyway? That's where I'm struggling here. The power that the school district had was to develop the program that would have allowed the child to be back in school by the time school started in early August, which is when Boone County begins. If on August 14th the ARC, the Admissions and Release Committee, which consists mostly of school personnel, had met and said, we have a placement, this child will return on August 14th, have him report to New Haven School into this classroom. If the child didn't show up, and if in fact that program was in place, then the school district had every opportunity to file due process and obtain a ruling that that was the appropriate, free, appropriate public education at that point. They did not because the program wasn't ready. There was no program for NW. So despite the fact that... So is there any authority that you've located that says that there is some temporal requirement here that if you start the IEP process by a certain date, unilateral placement wouldn't apply, but if you don't, unilateral placement will apply? No. In fact, Your Honor, the state put statute, which is really the state put statute 1415 sub J, puts these elements in play. During the pendency of the proceeding, which, by the way, earlier in subsection C and E refer to appeals as well, the child shall remain in the then current educational placement. And courts have struggled with that then appropriate or then current educational placement. The ZVD case in a footnote said that neither statute nor legislative history instructs the court how to identify that. It most certainly is not temporal under any court's analysis. So if the statute doesn't have any temporal requirements, the cases don't, nobody yet has mentioned the regulation that seems to me to be relevant to distinguish some of these earlier cases, including one of ours. How do you address... What should we do with CFR 300.116 that defines placement? Well, I would say that 305.118 is more relevant regarding the state put. That's the one that defines state put further. What's the number again? 300.518. It's the one that the district court cited. Okay. Why is 300.116 not relevant? 300.116, to just elaborate on that question, is defining one of the words in the state put provision you're relying upon, isn't it? Defining the... State put uses the word placement but doesn't define it. It's then defined in 300.116. As in the Thomas case, is that the one that defines that? No, I'm just asking you about the regulation. When we issued Thomas, there was no regulation. And the court says in a footnote, in the absence of a definition and a regulation, here's what we think. Then they promulgated a regulation. It seems to me, unless I'm missing something, it defines the operative word you're relying upon in the state put provision. It does, and in that... How can you dismiss that? Well, rather than dismiss that, what I would draw the court's attention to is to say that the placement can't be selected unilaterally by the parents or the school district. Neither body is able to do that. So while the school district now wishes to go back to one of the other case law definitions of the last agreed-upon placement, that creates an absurd result in that St. Rita, the child was two years removed from that school at the time, and in fact had been removed from that school because his behaviors had escalated based on his autism, that they found him on the roof of the school building at one time. It doesn't make sense to think that we would go back to that placement and force the child back there. So one problem with 300.116 is it says that the child's placement in subsection B, the child's placement B2, is based on the child's IEP. So the problem is that there was no IEP after the IEP that sent him to St. Ann? Is that right? There was an IEP every year because he continued to be a student of the Boone County Schools. The district has said that he didn't enroll there, but they continued to have admissions and release committee meetings every year. They treated him as a student of the school district despite the fact that he wasn't attending school there, and he never had. He had never been in a Boone County school, yes. When you finish, other than the placement at St. Rita's, did the school district ever affirmatively agree or place NW at any other place other than within their own system? He did not. They were suggesting that he come back to a placement in Boone County Schools in their own properties, but he went from the time he was three years old until seven to St. Rita and then ABS. St. Rita's was the only one that they said, send him there and we'll pay for it? Yes. The rest of your argument, it seemed to me, is acquiescence or an estoppel type thing. They didn't go and physically yank the kid out or something? Well, they realized that they had broken a term of the mediated agreement, and I think that was the whole basis of the acquiescence, is that they would continue on to relieve that. And certainly nothing since the agreement was reached, the settlement agreement. I mean, there's certainly nothing that the school board has done, no affirmative placement or agreed to pay any outside expenses. On an individualized education program, which is a multi-page document, there is a box for placement where you write that in, but all through the conference summary notes and through the programs that were created for this child, it was noted that he would be at ABS all through the summer, which is a year-round school. He would attend there through the summer into the fall when they would just begin to go and observe him, and then he would begin in late September to begin to go back to a Boone County school. I see that I'm out of time. Would you like me to continue? Yes. Are we only arguing here about the one school year? I've forgotten which year it is, so let me describe it by saying it's the school year beginning when you say they started the IEP late. Are we only arguing in this case about that one year, or he has then stayed in that private school every subsequent year, right? He has. So does a decision here then apply to each subsequent year as well? I believe it does under the procedure. And there's never been an IEP that the school district and the parents have agreed upon during any of that period? I may have led you in the wrong direction. There was an IEP that they were working on at ABS. The Admissions and Release Committee continued to meet. They developed IEPs that they were following, that ABS was following. Have the parents and the school district ever agreed upon an IEP since this dispute arose? I would say they have. The IEP that was in place. There's a signed one? There's a signed IEP for these subsequent school years? Yes, although I will make the caveat that signing an IEP is not your agreement to it, but your presence at the meeting. But, yes, there was consensus and an IEP approved that they were operating with at ABS. What does it say for the years after this first year in question? What does the IEP that you say that everybody agreed to, what does it say about the placement? Well, actually, it's an expired IEP because there was not, in the summer of 2011, there was not one that was ever agreed. And was there one ever agreed after that? No. So you said a minute ago there was. The one for the 10-11 school year that they were following at ABS. Okay. There was. Thank you. Thank you. I think on that last point I do want to clarify that in the subsequent time period, after the due process hearing, the parents have refused to meet with the school district to update NW's IEP. The school district has sent invitations for them to participate in ARCs, and they just refused. So to respond to Ms. Binns' I'm not asking you to make her a case for her, but is there a potential timeliness argument, assuming there is? Well, we can't force them. Or subsequent periods? No. We can't force them to come to the table. The best we can do is invite parents. You can give them an excuse for not coming if you do something that's late, I suppose. But we haven't. Oh, I see. With respect to the mediated agreement, first of all, there are findings by the hearing officer, the ECAB, and Judge Bertelsman. All have been affirmed. None of those have been appealed, that the district was not in breach of that agreement. The agreement called for an ARC to be held by April 15th, I think it was. The school district contacted the parents shortly before. They did not respond. The school district attempted to schedule it within a couple days of the 15th. I think it was like April 21st, 22nd, somewhere in there, and the parents refused to participate. That all went back to the—and that was an issue that was litigated and decided and has not been appealed to this Court of Appeals about the district's compliance with the mediated agreement. But the district did—the findings are that the district did comply, and the record establishes that. And that's not been appealed. Essentially, you know, before I reach the end of rebuttal, I think what's important here is to look at what is the effect of this decision, not only just to the Boone County School District, but to the very fabric of IDEA itself. IDEA contemplates collaboration and cooperation in any educational decision and placement between collaboration with the school district and the parents. Neither one—Ms. Ginn's correct—neither one can unilaterally place a child, and neither one can penalize the other side because of that unilateral decision. And yet, in this case, that's exactly what is happening here. And I truly believe that the district court, in the end, was trying to split the baby, more or less, uphold the findings of the ECAB, and I think the district court thought, well, I'll throw a bone over to the parents and give them that tuition reimbursement without thinking. Just for the one year. But keep in mind why due process and IDEA is so much different than ordinary civil cases. In civil cases, we can invoke issue preclusion, claim preclusion for subsequent claims. That's not necessarily the case when you have a child under IDEA because each year is a new IEP, and each year that IEP is developed— You can invoke that essentially through the state put purpose. Not under this application. And I think the concern— Excuse me. If it's not a unilateral placement, if it's an agreed-upon placement, that IEP expires at the end of the year, no agreement is reached in subsequent years, essentially you are precluded from challenging that under the state put provision. The whole issue here isn't issue preclusion. It's the question of unilateral placement. It's the question of unilateral placement. I agree. Absolutely. And that is the provision that, frankly, the district court, when you read the memorandum opinion, never addresses. Thank you very much. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?